1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

| ICF TECHNOLOGY, INC., | CASE NO. C13-2068JLR |
|---|---|
| Plaintiff, | ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER |
| v. | |
| GOOGLE, INC., | |
| Defendant. | |

15      Before the court is Plaintiff ICF Technology, Inc.'s ("ICF") motion for a

16  temporary restraining order ("TRO").  (Mot. (Dkt. # 15).)  ICF is a company that hosts

17  websites.  (Am. Compl. (Dkt. # 18) ¶ 4.)  ICF claims that Defendant Google, Inc.

18  ("Google"), a multinational corporation that controls the world's most-used internet

19  search engine (*id.* ¶ 5), is interfering with ICF's business relations by restricting access to

20  its customers' websites (*id.* ¶¶ 11.1-12.6).  ICF asks the court to order Google to cease

21  these actions immediately.  (*See* Mot.)  Google argues that a TRO is not warranted at this

22  time.  The court agrees with Google, concluding that a TRO should not issue because ICF

ORDER- 1

1  has not demonstrated a likelihood of success on the merits of its claims, or indeed even

2  serious questions going to the merits of its claims.

3  **I.   BACKGROUND**

4      ICF is a "web host" for several thousand subscription websites.  (Am. Compl. ¶ 4.)

5  ICF uses hard drive space and bandwidth on its servers to host websites, thus allowing

6  companies to offer services on the internet without having to invest in the hosting

7  technology and infrastructure themselves.  (*Id.*)  The websites involved in this case are

8  pornography websites hosted by ICF.  (Engrav Decl. (Dkt. # 1-4) Ex. A at 7-31.)  They

9  include sites such as "www.hotxxx.com," "www.lotzawebcams.com,"

10 "cams.youjizzpremium.com," and hundreds more.  (*Id.*)

11     Google recently took adverse action against these websites.  (Am. Compl. ¶ 6.)

12 Google notified ICF and its clients that the websites in question violate Google's

13 "Webmaster or Quality Guidelines."  (*Id.*)  Specifically, Google warned the sites not to

14 engage in "thin content," i.e., providing internet content that has little or no value to end-

15 users.  (*Id.* ¶ 9.)  Google applied a "manual spam action" to these pornography websites,

16 which ICF alleges makes it "nearly impossible" for users to access the websites through

17 the Google search engine or any Google-affiliated browser or operating system such as

18 Chrome, Firefox, or Android.  (*Id.* ¶ 6-7.)  Specifically, ICF alleges that if a user seeks to

19 access the websites in question through a Google-affiliated platform, the user is directed

20 not to the requested website, but to links containing information on how to hack into that

21 website without a subscription.  (*Id.*)

22

1   ICF sued Google.  ICF claims Google tortiously interfered with a prospective

2   advantage, business expectancy, or contractual relation of ICF by limiting access to its

3   clients' websites.  (*Id.* ¶¶ 11.1-12.6.)  ICF also alleges defamation and a claim under

4   Washington's Consumer Protection Act ("CPA"), RCW chapter 19.86.  (*Id.* ¶ 13.)  ICF

5   claims that if Google is not ordered to cease and desist its "manual spam action"

6   immediately, ICF will suffer irreparable harm.  (Mot. at 3-4.)  Accordingly, ICF moved

7   for a TRO.  (*See* Mot.)

8   ## II.   ANALYSIS

9   **A.   Legal Standard for Issuing a TRO**

10   The standard for issuing a TRO is identical to the standard for issuing a

11   preliminary injunction.  *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887

12   F. Supp. 2d 1320, 1323 (N.D. Cal. 1995).  The court must consider (1) whether the

13   plaintiff is likely to succeed on the merits; (2) whether the plaintiff is likely to suffer

14   irreparable harm absent a TRO; (3) whether the balance of hardships tips in the plaintiff's

15   favor, and (4) whether the injunction is in the public interest.  *Winter v. Natural Res. Def.*

16   *Council, Inc.*, 555 U.S. 7, 20 (2008).

17   In the Ninth Circuit, courts also apply the so-called "serious questions" test.  *See*

18   *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).  The Ninth

19   Circuit has held that the serious questions test is consistent with *Winter* and that courts

20   may still apply that test.  *Id.* at 1134 ("[T]he 'serious questions' version of the sliding

21   scale test remains viable after the Supreme Court's decision in *Winter*.").  Thus, the Ninth

22   Circuit has held that a district court may grant injunctive relief if there are serious

1  questions going to the merits of the plaintiff's claims and the balance of hardships tips

2  sharply towards the plaintiff, "so long as the plaintiff also shows that there is a likelihood

3  of irreparable injury and that the injunction is in the public interest." *Id.* at 1134-35.

4  **B.      ICF Has Not Shown Likelihood of Success on the Merits**

5         Neither of the above standards is met here because ICF has not shown likelihood

6  of success on the merits of its claims, or indeed even serious questions going to the merits

7  of its claims.  The court applies well-settled principles governing preliminary injunctive

8  relief.  Preliminary injunctive relief is "customarily granted on the basis of procedures

9  that are less formal and evidence that is less complete than in a trial on the merits." *Cf.*

10  *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  At the TRO stage, a "party is

11  not required to prove his case in full . . . ," and "it is generally inappropriate for a federal

12  court at the preliminary-injunction stage to give a final judgment on the merits." *Id.*  A

13  party seeking preliminary relief has the initial burden of proving likelihood of success on

14  the merits. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007).

15         ICF has not met this initial burden.  On each of ICF's claims, there is at least one

16  element for which, at this stage, success seems unlikely.

17         This is most apparent with respect to ICF's tortious interference claims.  To prove

18  a claim for tortious interference with contractual relations or a business expectancy, a

19  plaintiff must show:  (1) the existence of a valid contractual relationship or business

20  expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional

21  interference inducing or causing a breach or termination of the relationship or

22  expectancy; (4) that defendants interfered for an improper purpose or used improper

1    means; and (5) resulting damages.  *Commodore v. Univ. Mech. Contractors, Inc.*, 839

2    P.2d 314, 322 (Wash. 1992).  ICF fails with respect to element (4)—improper purpose or

3    improper means.  ICF makes only a formulaic allegation of improper purpose:  "Google's

4    interference was for an improper purpose or made by improper means."  (Am. Compl.

5    ¶¶ 11.5, 12.5, 13.4.)  In its briefing, ICF confirms that it does not know what Google's

6    improper purpose might be:  "Google's intent is a question of fact and as of yet Plaintiff

7    does not know Google's intent behind the manual spam action."  (ICF Suppl. Br. (Dkt.

8    # 18) at 8.)  This is insufficient to meet ICF's burden of showing that it is likely to

9    succeed on its tortious interference claims.  *See Commodore*, 839 P.2d at 322.  ICF

10   presents only speculation[1] regarding Google's improper purpose, and speculation is not

11   enough to meet ICF's burden of showing likelihood of success or serious questions.  *See*

12   *Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 6 (1st Cir. 1991) ("Likelihood of

13   success cannot be woven from the gossamer threads of speculation and surmise.")

14        ICF's other two claims face similar hurdles.  To be specific, ICF has not presented

15   enough evidence and argument to meet its burden of demonstrating that it is likely to

16   succeed in proving the elements of its claims for defamation and violation of the CPA.[2]

17

18   ───────────────

19   [1] ICF appears to rely on the following line of reasoning:  Google must have some purpose
     for its actions; they claim their purpose is "thin content"; there is no "thin content"; thus, "thin

20   content" is not Google's actual purpose, so Google must have some other purpose; therefore
     Google's actual purpose must be improper.  There are numerous flaws in this logic, if this is
     indeed the logic ICF is employing.  Further, as discussed below, ICF has not demonstrated that it

21   can prove that its websites do not have "thin content."

22   [2] This is not to say that success on these claims is impossible; only that, at this point, it
     appears unlikely based on the record before the court.  *See Camenisch*, 451 U.S. at 395 ("[I]t is

ORDER- 5

1  *See Perfect 10*, 508 F.3d at 1158.  To prove a claim for defamation, a plaintiff must

2  show:  (1) falsity; (2) an unprivileged communication; (3) fault; and (4) damages.

3  *Commodore*, 839 P.2d at 320.  To prove a claim for violation of the CPA, a plaintiff must

4  show:  (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3)

5  public interest impact; (4) injury to plaintiff in his or her business or property; and (5)

6  causation.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531,

7  532-33 (Wash. 1986).

8        For each of these claims, ICF faces key obstacles.  In particular, ICF would need

9  to convince the court, through either factual evidence or citation to legal authority, that

10  Google's actions were in some way unwarranted or wrongful.  *Commodore*, 839 P.2d at

11  320 (requiring falsity for defamation); *Hangman Ridge*, 719 P.2d at 532-33 (requiring an

12  unfair or deceptive act for a CPA violation).  Google claims that it performed its manual

13  spam action for legitimate reasons—because ICF's clients' websites had "thin content,"

14  among other problems.  (*See* Am. Compl. ¶ 9.)  Thus, to succeed on its claims, ICF

15  would need to persuade the court, or a jury, that Google's claim of "thin content" was

16  false, *see Commodore*, 839 P.2d at 32, or that its manual spam action was deceptive, *see*

17  *Hangman Ridge*, 719 P.2d at 532-33.  ICF has not done this.  ICF argues that its clients'

18  websites do not have "thin content," but instead have only overlapping content with

19  multiple "webcam" performers appearing on numerous different websites.  (ICF Reply

20  (Dkt. # 4-4) at 36-37.)  This may or may not be true—the court is far from an expert in

21

22  generally inappropriate for a federal court at the preliminary-injunction stage to give a final
    judgment on the merits.").

1    these matters and has very little competent evidence before it on which to make an

2    informed decision.  (*See id.*)  Even if ICF's claims are true, it is another consideration

3    altogether whether this state of affairs supports Google's claim of "thin content," or

4    renders that claim false or deceptive.  However, what is apparent to the court is that the

5    evidence and authority currently in the record is insufficient to establish a likelihood that

6    Google's "thin content" claim is either false or deceptive.  Based on this shortcoming, the

7    court concludes that ICF will likely struggle to prove its claims for defamation and

8    violation of the CPA.  *See Commodore*, 839 P.2d at 32; *Hangman Ridge*, 719 P.2d at

9    532-33.

10          Each of these claims presents its own unique problems as well.  To prove

11   defamation, ICF will need to show that Google published an unprivileged

12   communication, namely its claim of "thin content."  *Commodore*, 839 P.2d at 320; *Pate*

13   *v. Tyee Motor Inn, Inc.*, 467 P.2d 301, 302 (Wash. 1970) (stating that a defamatory

14   statement must be "communicated to someone other than the person or persons

15   defamed").  Google vigorously disputes this element, arguing persuasively that it only

16   disseminated its claim of "thin content" to ICF and ICF's client websites, all of whom are

17   "persons defamed."  (*See* Google Resp. (Dkt. # 4-1) at 42.)  ICF does not demonstrate

18   what proof or argument it will present to the contrary.  (*See* Mot.; ICF Suppl Br.)

19   Similarly, to prove a violation of the CPA, ICF will need to prove public interest impact.

20   *See Hangman Ridge*, 719 P.2d at 532-33.  Again, Google vigorously disputes this

21   element.  (*See* Google Resp. at 42-43.)  And while the court takes no position on the

22

ORDER- 7

1  question of public interest impact, this presents yet another obstacle to ICF's potential for

2  success on the merits.

3      Finally, even if these obstacles could be surmounted, ICF would need to overcome

4  Google's immunity defenses. *See Perfect 10*, 508 F.3d at 1158 (stating that if the moving

5  party carries its burden of demonstrating likelihood of success on the merits, "the burden

6  shifts to the non-moving party to show a likelihood that its affirmative defense will

7  succeed").  Google asserts that it is immune from suit under the First Amendment and the

8  Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(2).  (Google Resp. at 38-

9  41.)  It is possible that ICF could circumvent these defenses in whole or in part by

10  arguing, as it does, that navigation through a browser's address bar does not warrant

11  protection under the First Amendment or the CDA.  (*See* ICF Suppl. Br. at 5-7.)

12  However, at present, ICF cites virtually no authority and presents virtually no evidence to

13  support its argument, nor does it provide any other persuasive reason why Google's

14  defenses do not bar its claims.  (*See id.*)  Thus, the court concludes that there is a

15  likelihood that Google's First Amendment and CDA defenses will succeed.  *See Perfect

16  10*, 508 F.3d at 1158

17      On balance, and considering the obstacles to ICF's success outlined above, the

18  court concludes that ICF has not met its burden of demonstrating likelihood of success on

19  the merits, or indeed even serious questions going to the merits of its claims.

20  Accordingly, ICF is not entitled to a TRO at this time.

21

22

ORDER- 8

1

## III.    CONCLUSION

2    For the reasons described above, the court DENIES ICF's motion for a TRO (Dkt.

3    # 15).

4    Dated this 20th day of December, 2013.

5

6

7    _____

8    JAMES L. ROBART
United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 9